## Case No. 7,412.

JOHNSON et al. v. SCHENCK et al.

[1 Cin. Law Bul. (1877) 374.]

Circuit Court, D. Louisiana.

Edgar M. Johnson and Clark, Payne & Renshaw, for complainants.

BILLINGS, District Judge. This is a final hearing upon the amended bill. cross bill, and depositions involving the title to the trade-mark "S. N. Pike's Magnolia Whiskey, Cincinnati, Ohio." I assume that this trade-mark means that the article to which it is affixed was made at the place of business, and after the methods used by S. N. Pike at Cincinnati, Ohio, and that it does not import, and cannot be understood as importing. that the article was made by S. N. Pike personally. The fact that S. N. Pike has been dead for several years. and that his death was well known to the public, seems to authorize this construction; otherwise a serious question as to the public morality of allowing either party to use this trade-mark might be presented, that is to say, if the meaning of the trade-mark was that S. N. Pike personally made the article. nobody but S. N. Pike could consistently, with good morals, be allowed to use it, and the attempt to use it after his death was publicly known would be an attempt to perpetrate a fraud which would defeat itself. Both parties claim under S. N. Pike.

In the year 1864, S. N. Pike, being the owner of the trade-mark, formed with two other parties the firm of S. N. Pike & Co., who did business both in Cincinnati and New York. One of the parties subsequently withdrew from the firm. This firm continued in operation down to the year 1872, when S. N. Pike died. In 1868, S. N. Pike sold to complainants his establishment in Cincinnati for the manufacture or preparation of liquors, including the real estate, fixtures, and the usual paraphernalia of such an establishment. It is claimed on the part of the complainants at the time of this sale that S. N. Pike transferred to them the exclusive right to use this trade-mark. It is contended by the respondents (Kidd & Co.) that, S. N. Pike having allowed the firm of S. N. Pike & Co. to use this trade-mark from 1864 to 1868. it has become the property of that firm, and it was not in the power of S. N. Pike individually to alienate it; that it continued to be the property of that firm down to the time of S. N. Pike's death, since which time it has survived to the surviving partners.

The question which I propose to examine is, what was vested in the complainants' firm. and from whom, so far as concerns this trade-mark? There is nothing said of the trade-mark in the deed of the real estate, or in the assignment of the personal property; but there is this paper introduced as executed on October 1, 1868. which was the time when possession was given to complainants' firm under their acts of transfer: "Having sold to Mills. Johnson & Co. my premises. 18 and 20 Sycamore street, I hereby extend to them and their successors the use of all my brands formerly used by me in my Cincinnati house. Samuel N. Pike. Cincinnati, October 1, 1868." There is also a letter introduced by complainants. which is as follows: "New York, November 11. 1870. Messrs. Mills. Johnson & Co.: Dear Sirs—We understand you are using an exact copy of the inclosed, with your signature, on the 'Dave Jones' brand of whiskey. This is an infringement which we cannot permit, as you have no right to use it. Mr. Pike did not have this addition when he gave you the use of his brand. We. therefore, insist that you desist using the name on the Dave Jones packages. Yours truly, S. N. Pike & Co." A letter bearing date November 21, 1870. from the same parties, S. N. Pike & Co., re-

cites in full the agreement of the 1st of October, also quoted, and claims that it has no reference to the addition of the Dave Jones' brand. It is, therefore, clear that S. N. Pike & Co. had a knowledge of the transfer to the complainants of the right to use this brand, and assented to it, and therefore the objection urged by the respondents' (Kidd & Co.'s) solicitors, that it was out of the power of S. N. Pike to transfer the right to use the brand, falls out of the case.

The remaining question, then, is, what right passed to the complainants under the paper executed by S. N. Pike on the 1st of October, 1868? That paper, in effect, transfers to complainants the right to use this brand, and also to their successors. Was this right an exclusive right? S. N. Pike and S. N. Pike & Co. were concluding their business in Cincinnati, the former having sold out to Mills, Johnson & Co. his place of business and the apparatus for conducting it The trade-mark pertained exclusively to an article made or vended in Cincinnati. Neither S. N. Pike nor his firm could continue to use that trademark excepting so far as related to articles already manufactured and held by them for sale in New York, without a fraud upon the public. Again, if any one but complainants are to be allowed to use this trade-mark, instead of being an advantage it might be ruin to their business. For this reason it seems to me that the words "all my brands formerly used by me in my Cincinnati house" carried with them the exclusive use of this brand. A trade-mark is a means of authenticating or indicating the origin of an article, and thus becomes a source of advertisement. It is necessarily connected with some business. In this case it was right and proper, and, indeed, natural, that the complainants, when they succeeded to the business establishment and the means of conducting the business which had belonged to S. N. Pike & Co., in Cincinnati, should succeed to the peculiar advantages and methods which their predecessors had successfully used, and had made known to the public by this trade-mark. It was a species of transfer of the good will which S. N. Pike & Co. had enjoyed, and which must continue to have its locality in Cincinnati, and could not in good faith towards the public be separated from that city, or used in connection with articles manufactured there. The question was made as to the meaning of the word "use." I do not see that there is any title in a trade-mark, excepting the right to use; and the trade-mark as conveyed to a firm and its successors, a complete interest, so far as it is capable of transfer, seems to me carried by these words. The question as to the right of respondents (Kidd & Co.), or either of them, to use the trade-mark, is, of course, disposed of adversely in the foregoing opinion.

As concerning the admission of testimony, all of the evidence offered by the complainants is suppressed, except the deed of the real estate; the act by which the fixtures and other property is assigned; the paper dated October 1, 1868; and the two letters of S. N. Pike & Co. referred to in the opinion of the court. All the testimony offered by the respondents is admitted.

Let, therefore, the injunction prayed for in the bill and the amended bill be granted and made perpetual, and let the matter be referred to M. M. Cohen, master, to take testimony upon notice, and report as to the amount of damages which the complainants have suffered.