SHELDON (AMERICAN DIAMOND ROCK BORING CO. v.). See Cases Nos. 296 and 297.

SHELDON (DIBBLEE v.). See Case No. 3,-889.

---

## Case No. 12,748.

SHELDON et al. v. HOUGHTON.

[5 Blatchf. 285; [1] 23 Leg. Int. 12.]

Circuit Court, S. D. New York. Dec.. 1865.

PROPERTY—GOOD WILL—FORBEARANCE.

1. What the incorporeal right. called "good will." considered as property capable of conveyance, does and does not carry with it.

[Cited in Yuengling v. Schile, 12 Fed. 106.]
[Cited in Rawson v. Pratt, 91 Ind. 19.]

2. "Good will" may adhere to or spring out of corporeal property. but corporeal property cannot adhere, as an incident, to "good will."

3. A "good will" which rests only on the voluntary and unconstrained· forbearance of those who are engaged in a particular trade, is not property, in any sense known to the law.

This was an application for an injunction and a receiver, in a suit in equity [by Smith Sheldon and others against Henry O. Houghton].

George T. Curtis, for plaintiffs.
William M. Evarts, for defendant.

SHIPMAN, District Judge. This is a case of novel impression. I am of the opinion

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

that it cannot be sustained, either upon principle, or by the application of any of the authorities submitted on the argument, or of any which I have been able to discover, after a somewhat diligent search. A full discussion of the vital points in the case will not now be attempted; and I shall, therefore, confine myself to a brief notice of such features of it as will disclose the grounds on which this motion is denied. The first material allegation of the bill is, "that, by the custom of the trade of booksellers and publishers in the United States, when any person or firm engaged in that business has undertaken the printing, publication and sale of a book not the subject of statute copyright, and has actually printed, published, and offered an edition of such book to the public for sale, other persons and firms in the same trade, having respect to the trade priority so acquired in the publication and sale of such book, or the particular edition thereof, refrain from entering into competition with such publisher by publishing such book in a rival edition, and that thereby, and by reason and operation of the custom aforesaid, the publication of such book becomes a good will in the hands of the person or firm so first publishing the same. where such book is one for which there is an extensive popular demand. and especially in the case of foreign authors of established reputation, whose works are not the subject of statute copyright in this country, and that such good will is often very valuable, and is often made the subject of contracts, sales, and transfers. among booksellers and publishers." It is, also, averred in the bill, "that. such custom is a reasonable one, and tends to prevent injurious competition in business, and to the investment of capital in publishing enterprises that are of advantage to the reading public." The bill then sets forth, "that, prior to the year 1861. one O. W. Wight projected the publication of a uniform edition of the works of Charles Dickens, a distinguished author of Great Britain, whose works are not the subject of statute copyright in the United States, and who is an author of great reputation in the United States as well as Great Britain, but whose collected works had not at that time been printed, published and sold in the United States in a uniform edition, and in the style projected by said Wight; that the said Wight contracted with W. A. Townsend & Co. for the publication of the edition aforesaid of the works of the said Dickens, and with Henry O. Houghton, the defendant herein, for the manufacture of stereotype plates from which to print the same; that one James G. Gregory succeeded to the business of W. A. Townsend & Co.; and that, subsequently, and some time prior to the 27th of December, 1861, the said Wight sold and transferred to the said defendant. Houghton, the good will and right of publication, under the custom of the trade, of the edi-

tion aforesaid." The bill then sets forth and counts upon the following contract, executed between the plaintiff and the defendant on the 27th of December, 1861: "Memorandum of an agreement made this 27th day of December, A. D. 1861, in the city of New York, by and between Henry O. Houghton, of the city of Cambridge, and State of Massachusetts, of the first part, and Sheldon & Co., publishers, (comprising the following persons, viz.: Smith Sheldon, Hezekiah Shailer, Melancthon M. Hurd, and Isaac E. Sheldon,) of the city and state of New York, of the second part, witnesseth: Whereas, the party of the first part is the proprietor of the 'Household Edition' of the Works of Charles Dickens, heretofore published by W. A. Townsend & Co. and James G. Gregory; and whereas, the party of the second part is desirous of becoming the publishers of the same, the following points are agreed to by and between the contracting parties: (1) The profits of each volume shall be equally divided between the two parties to this contract, said profit consisting of the difference between the actual cost of manufacturing each volume, and the wholesale price of the same, said price to be fixed permanently, so far as this contract is concerned, at fifty cents, and the party of the second part agrees to sell the books at that price, except in small lots and on trade account. The cost of manufacturing shall be made up by said party of the first part, by charging the paper used at cost, the printing at his usual rates for works of a similar class, and according to numbers ordered, and the regular price for folding, collating, waste leaves and tissue paper, adding thereto the cost of plate paper, printing plates, cases, and any other expense that would legitimately belong to the manufacture of the book. (2) The expense of circulars and advertising of the series to be divided equally between each party, an accurate account to be kept of the same, and rendered on the first days of July and January in each year, the balance due from either party to be paid to the other in cash. The extent of advertising, and the amount to be expended for circulars and advertising, to be regulated by mutual agreement. (3) The party of the first part agrees to abate the copyright and use of plates on all copies of each new volume given for editorial purposes, to the number of two hundred and fifty copies, said abatement to be made on settlement of advertising accounts, on the first days of July and January of each year, an accurate account to be kept of the copies presented, and to whom given, by the party of the second part. (4) The party of the second part to take, of each new volume, as issued, two thousand copies, and of subsequent editions either five hundred or two hundred and fifty copies, as may seem best to all concerned. (5) Payments to be made by the party of the second part to the party of the first part, by note, at six months from av-

erage time of the delivery of the books. (6) The books to be made in the same style, and uniform with, and not inferior in quality to, the previous volumes of the same series, as formerly published by W. A. Townsend & Co. and J. G. Gregory. (7) All copies of the books delivered in sheets, or folded and collated, to the party of the second part, to be subject to the proper deductions for binding. (8) The party of the first part, in consideration of the above, agrees to give to the party of the second part the exclusive right to publish the same. It is understood and agreed that this contract shall be in full force and binding for the term of three years from this date, and thereafter, until one party shall have given to the other one year's notice in writing, signifying their wish to annul this contract, and in case no satisfactory arrangement can be made for the settlement of each party's interest in the same, an arbitrator shall be chosen by each party, which said arbitrators shall choose a third arbitrator, and their decision in the case shall be final and binding on all parties. In case of the insolvency or death of the party of the first part, or the insolvency or such dissolution of the firm of the party of the second part, as shall unfavorably affect their standing and credit, it shall be considered the same as though the three years had expired, and the one year's notice of desire to terminate the contract had been given, and arbitrators shall be appointed to settle the matter as provided above, if the parties or their executors cannot agree to a settlement. Henry O. Houghton. Sheldon & Company, by Smith Sheldon. Signed and sealed in the presence of Joshua T. Davis." The bill also sets forth, that, at the time the last named contract was entered into, a number of volumes of the edition had been published and offered for sale, part by Townsend & Co., and the rest by Gregory, but that the remaining works of the series, amounting to thirty volumes, had been published and offered for sale by the plaintiff, who had, also, since making said contract, published and sold the original volumes put forth by Townsend & Co. and by Gregory. The sales of all of the volumes appear to have been large. It is further averred that, by force of this contract between the plaintiffs and the defendant, they became partners in the business of publishing this edition; that the good will and right of publishing, under the custom of the trade, thereby became partnership property, to be held for the joint benefit of the parties, and to be valued and disposed of as partnership property; that an illustration was engraved expressly for each volume, and copyrighted by Houghton; that these copyrights were, by the contract, agreed to be transferred to the plaintiffs, and they are now the equitable owners of them, in trust for the partnership; that, by reason of the exertions of the plaintiffs, who are eminent and well known booksellers, the

good will of said edition, and the right of publication thereof, according to the custom of the trade, has become, and now is, of much greater value than before the same became partnership property, and, as is believed, is capable of being sold to others in the trade for the sum of thirty thousand dollars; that the defendant gave the notice provided for in the contract, for its termination, on the 27th of December, 1864; and that, unless the publication is continued beyond the 27th of December, 1865, in the same manner as heretofore, under the order of this court, the good will will rapidly deteriorate, and the plaintiff will suffer irremediable injury. The prayer for relief covers all the allegations in the bill. I have not stated all its averments in detail, as that is not necessary for the purpose of this motion. Upon this bill, and certain affidavits, the plaintiffs move "for the appointment of a receiver, to continue the manufacture, publication and sale of the books described in the bill, and which are embraced in the contracts thereto annexed, until the final hearing of the case;" and that "the court direct that the business of manufacturing, publishing and selling the said books, as heretofore conducted under the said contract, be continued by the parties, the plaintiffs and the defendant, under such receiver, until the final hearing and decision of this cause, or the further order of the court, and that an injunction issue to the said parties respectively, directing and commanding them to act herein as the agents of such receiver, in discharging the several duties and obligations, and doing the several acts, provided to be done in and by the said contract, &c."

This bill and motion are sought to be grounded on the principles which govern courts of equity, in dealing with the assets of a partnership, at its dissolution; and the question, whether or not the contract between the parties to this suit amounted to a partnership or not, was discussed at length on the argument. It is possible that, in some of its features, the agreement may be held to establish a relation closely resembling that of partnership; but I do not now go into that question, because I do not deem it necessary, to enable me to properly dispose of this motion. I will, therefore, assume, for my present purpose, that there was a special, limited, and peculiar partnership established between the plaintiffs and the defendant, in the enterprise set forth. The question then arises— what are the partnership assets upon which this court can bring its power to bear, for the purpose of protecting the interests of the parties thereto? As there is no question raised as to the rights of creditors of the partnership, the whole controversy relates to the alleged conflicting interests of the members of the firm among themselves.

This court can deal only with the assets which belong, in law or equity, to the partnership. What are they? I do not find, from the contract, or from any evidence in the cause, that the partnership acquired any title, either legal or equitable, to any corporeal property about which any dispute has arisen. I think that the stereotype plates, the plates from which the illustrations are printed, and the copyright thereto, are, clearly, the sole property of the defendant, and that all right in their use, in the interest of the plaintiffs, must cease when the partnership expires. Laying out of the case the question touching what is called the "good will," I see no ground upon which it could be insisted that the partnership acquired any title to, or interest in, these plates and copyrights, beyond the right to have them used, for the term fixed by the contract, in carrying out the enterprise.

The only assets, then, which can, in any view, be supposed to belong to the partnership, about which there is any controversy, is this species of incorporeal property called "good will." If this could be deemed, under the peculiar circumstances of this case, to be property, capable of transfer, and possessed of value, its conveyance to the partnership, if it ever was conveyed, did not carry with it the printing establishment of the defendant, nor that portion of it which was employed in printing these books, nor the copyrights of the illustrations. If anything which can be called, in any legal sense, property, was transferred to this partnership, it must have been that incorporeal right of publishing this edition of Dickens, which is described in the bill as a "good will," founded upon the custom of the trade to forbear competition. No corporeal property was embraced in this supposed transfer, by the terms of the contract, and none could adhere to it, as an incident. Good will may adhere to, or spring out of, corporeal property, or a tangible locality or establishment; but I think it would be new doctrine to hold the reverse, and treat the material property as an incident of the good will. Good will must always rest upon some principal and tangible thing, and it has, therefore, been held, that it can never arise as an asset of a partnership, where the members only contribute as capital their professional skill and reputation, however intrinsically valuable these may be.

Now, what is this alleged good will, in the present case, which this court is asked to treat as property, and for the preservation and beneficial sale of which its power is invoked, to continue the operation of this contract beyond the time fixed by its terms? It confessedly rests upon no common law of the country, recognized and administered by judicial tribunals. If it has any foundation at all, it stands in the mere will, or, as it is termed in the bill, the "courtesy" of the trade. True, it is called by the plaintiffs, the "custom" of the trade, and is alleged in the bill to be a "reasonable custom." But I apprehend that it is very far from being a legal custom, furnishing a solid foundation upon which an inviolable title to property

can rest, which courts can protect from invasion. It can, therefore, hardly be called property at all—certainly not in any sense known to the law. It may be an advantage to the party enjoying it for the time being, but its protection rests in the voluntary and unconstrained forbearance of the trade. I know of no way in which the publishers of this country can republish the works of a foreign author, and secure to themselves the exclusive right to such publication, in any form of edition, except so far as new matter or illustrations are incorporated into it, and then, to that extent, made a subject of copyright. The ornamental designs of the binding or dress of the volumes might possibly be patented; but nothing relating to the edition can come under the protection of the law, except what is new and original, and is covered by copyright or letters patent. For this court to recognise any other literary property in the works of a foreign author, would contravene the settled policy of congress, and be an attempt to enter the field belonging exclusively to the national legislature. Of the wisdom of our legislative policy I have nothing to say here.

This alleged good will rests, therefore, upon no legal foundation, and, consequently, is not a partnership asset possessing any legal value. The books were printed by the defendant at his printing establishment in Cambridge, Massachusetts, and were published and sold by the plaintiffs, at their book store in New York; but neither of these establishments are partnership assets, which this court can decree to be sold, so as to carry with them a good will, in the ordinary sense in which that term is regarded as descriptive of property. Neither are the types, plates, or copyrights, from and under which the edition was printed, such assets. The only thing the court could decree a sale of would be this peculiar advantage, called the good will of the trade toward this particular edition. If this court were to appoint a receiver, he would have nothing to take, but this peculiar incorporeal right or advantage; and, should the business be continued, under this contract, for a period of years, the receiver would take nothing else, as there is nothing else belonging to the partnership which the parties are not agreed between themselves to take, without the interposition of the court. At the end, the court could decree the sale of nothing else. The buyer would take nothing valuable but what he would have been entitled to before, except the negative advantage of having the parties to this suit enjoined against the further use of the implements or materials by which this edition has been produced. This the court would not do if it had the power, because it would tend to destroy, and not conserve, the property. As it could not compel the sale and transfer of these implements and materials to the purchaser of the good will, but only forbid their further use by the defendant, its decree would be only productive of mischief to the defendant and the public, without conferring any benefit upon the plaintiffs, for the sale of this advantage called good will would bring nothing, as it would be worth nothing. The motion is, therefore, denied.