## STORM WATERPROOFING CORPORATION v. L. SONNEBORN SONS, Inc.

District Court, D. Delaware. April 6, 1929.

### No. 690.

See, also, 28 F.(2d) 115.

Robert H. Richards, of Wilmington, Del., and Charles H. Wilson and C. C. Cousins, both of New York City, for plaintiff.

Hastings, Stockly & Morris, of Wilmington, Del., and A. S. Gilbert, of New York City, for defendant.

MORRIS, District Judge. The plaintiff, alleging its ownership of the word "Stormtite," registered by it under the act of 1905 (15 USCA §§ 81–109), as a trade-mark for waterproofing paint or other material for use on wall, roofs and masonry surfaces and the infringement of that mark by defendant's use of the word "Stormtight" as a trademark for like materials, seeks by its bill of complaint, the usual relief in equity.

The defendant denies plaintiff's ownership of "Stormtite" and denies that it was regularly or validly registered under the trade-mark statutes. It relies more particularly, however, upon the defense of abandonment and renunciation of the mark by plaintiff, evidenced by an agreement made between the plaintiff as party of the first part, the defendant as party of the second part, and Walter H. Storm as party of the third part, on September 12, 1927, and ratified by plaintiff's board of directors, at a meeting held for that purpose, on October 19, 1927.

The agreement recites that the plaintiff herein, prior to August, 1926, sold material under the name "Stormtite," but not in package form to the trade; that it ceased that business about the month of August, 1926, and has abandoned the business and the use of the mark "Stormtite"; that for many years then last past, the defendant herein has been and now is selling merchandise, under the trade name and mark "Stormtight," that there is now pending in the Supreme Court of the state of New York an action instituted by the defendant against the plaintiff herein; that "Stormtite" is no longer of any value to this plaintiff; that the use of the mark "Stormtight" has never caused any injury and cannot in the future cause any injury to this plaintiff; and that the

parties desire to settle their differences. Following the recitals, the plaintiff herein agreed and declared that it had abandoned the mark "Stormtite"; that it renounced all right to the use of the mark "Stormtight"; that it would not use any mark, name, symbol, or device resembling "Stormtight" or words having the same meaning, and that the intent of the agreement was to insure to the defendant herein the sole and exclusive right to use the word "Stormtight" in any form as a trade-mark indicating its product and no other. The plaintiff herein and Storm further expressly consented therein to the use of "Stormtight" by the defendant here, and released and discharged it from any and all claims theretofore made against it, by reason of its use of "Stormtight." Storm agreed that he would not permit his name as a part of a trade name or mark to interfere in any manner with defendant's use of the mark "Stormtight." In consideration thereof, the defendant herein thereby agreed to pay to the plaintiff and to Storm $2,000 and to discontinue without costs the action then pending in the Supreme Court of the state of New York. The consideration money was paid and the New York suit discontinued.

The plaintiff, not denying that the agreement, if valid, constitutes a complete bar to a decree in its favor, asserts that it is invalid upon the grounds that it is, in legal effect, a conveyance and assignment of the trade-mark "Stormtite"; that "the trade-mark 'Stormtite' and the good will which it engendered" constituted the sole and only asset of the plaintiff; that a corporation is without power to alienate or transfer its entire corporate property without the consent of its stockholders; and that such consent, with respect to the contract in question, was neither asked nor given. It likewise charges that the contract was obtained by fraud. Defendant denies the fraud and contends that the approval of the contract by stockholders was not essential in that (1) the agreement was but a settlement and compromise of long existing differences in litigation between the parties by a formal declaration and acknowledgment under seal for a consideration that the business of the plaintiff and its use of the mark had in fact been theretofore discontinued and abandoned and was in no sense an assignment of the mark whose very existence the agreement denied; (2) plaintiff's assertion that it possessed a trade-mark without a business or other asset is a legal paradox and impossibility; and (3) the agreement was made after proclamation, by the Governor of the state of Delaware, under whose laws plaintiff's charter was granted, declaring its charter forfeited and the corporation dissolved for nonpayment of taxes and before the reinstatement of the corporation.

 I find no evidence whatsoever warranting a conclusion that the contract was obtained by fraud. The recitals of fact set out in the agreement are supported by the evidence here adduced. The only recital with respect to which there may be even a tenuous doubt as to its literal accuracy is the precise date of the abandonment of plaintiff's business. That its business, consisting not in the sale of its materials to others for their use, but mainly, if not entirely, in supplying and applying them under contract, had dwindled and become negligible long before the agreement of September 12, 1927, was entered into, and had come to an end months before that agreement was made, is clear. Plaintiff was in debt without means to pay. Whether the business and its incidents had been abandoned in a legal sense hung, however, upon the question of plaintiff's intent. That was disclosed, settled, and is here evinced by the agreement with the defendant. Moreover, it is a fundamental principle of the law of trade-marks that a trade-mark cannot be assigned save in connection with a transfer of the business and good will with which the mark has been used. Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 S. Ct. 625, 35 L. Ed. 247; Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769; Act Feb. 20, 1905, § 10 (15 USCA § 90). The agreement of September, 1927, discloses no intent whatever to transfer any business of the plaintiff to the defendant. It would be novel doctrine indeed to consider business as an incident to good will or trade-mark. Sheldon v. Houghton, 21 Fed. Cas. 1239, No. 12,748. The instrument in question is that which it purports to be—a formal acknowledgment and agreement that the business and trade-mark of the plaintiff had been abandoned, not an assignment of a trade-mark.

 Again, there is no such thing as a right in gross to a trade-mark. It is inseparable from good will. It is nonexistent unless connected with some business. Johnson v. Schenck, 13 Fed. Cas. 831, No. 7,412. If at the date of the agreement, plaintiff had no business and no good will, obviously it had no incidents thereof such as a trade-mark. If it had a business and good will, that business and good will remained the property of the plaintiff even after the agreement was entered into, regardless of the construction placed thereon. Consequently, in no con-

994

ceivable way, can it be correctly said that the agreement constituted a transfer of all the assets of the plaintiff.

But, if it be assumed that the instrument in question was, in effect, a transfer of everything the plaintiff had, plaintiff's position is not improved. Its charter had been repealed and the corporation dissolved, under the Revised Code of Delaware, §§ 111–114, for nonpayment of taxes. At the time the agreement was made, the corporation had a continued existence only for the limited purposes specified in section 40 of the Delaware Corporation Act (22 Del. Laws, c. 394). McBride v. Murphy, 14 Del. Ch. 242, 124 A. 798; Big Sespe Oil Co. v. Cochran, 276 F. 216 (C. C. A. 9). The provisions of that section constituted its only charter during its "continued" existence as a body corporate. That section states: "All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall, nevertheless, be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which said corporation shall have been established. * * *." By virtue of that section, plaintiff had been since the first of the year 1927, wholly without right or power to continue its business or to use in business any trade-mark it may have owned. Yet, under that section, plaintiff had express power, at the time the agreement was made, to dispose of and convey any and all property it possessed. That power, the stockholders, by withholding their consent to its exercise, could not destroy. Viewed from any aspect, consent of plaintiff's stockholders was not a prerequisite to the validity of the agreement relied upon by the defendant.

The bill of complaint must be dismissed.