290 So.2d 753 (1974)
BUYERS AND TRADERS SERVICE, INC., Plaintiff-Appellee,
v.
CAR MAINTENANCE SPECIALISTS OF BATON ROUGE, LA., INC., Defendant-Appellant.
No. 9637.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 18, 1974.
Writs Refused May 17, 1974.
*754 Victor L. Roy, III, Baton Rouge, for defendant-appellant.
Bailey E. Chaney, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, TUCKER[*] and WATSON, JJ.
SARTAIN, Judge.
Plaintiff by this suit seeks the cancellation of a lease and franchise agreement between plaintiff and defendant. Plaintiff also seeks damages for the alleged breach of the lease and for the alleged misappropriation of the name "Kar Klinik" granted to defendant in the franchise. Following trial on the merits, the trial court rendered judgment in favor of plaintiff ordering the lease and franchise agreement cancelled and awarding damages to plaintiff in the sum of $4,594.20. An award of $1,050.53 was also made to plaintiff for rentals due on the lease as of January 1, 1973.
The plaintiff corporation was formed in 1959 shortly after Mr. Leo Wroten opened the auto repair business known as "Kar Klinik" located on leased premises at 3960 Florida Boulevard in the City of Baton Rouge. On June 29, 1959, plaintiff registered the trade name "Kar Klinik" with the Louisiana Secretary of State. According *755 to the registration records, which were introduced in evidence at trial, the name was to be used to designate a particular place of business and particular business.
In 1961 Mr. Wroten and Mr. Randolph Stewart incorporated the defendant corporation. Under an agreement between plaintiff corporation and defendant corporation, Kar Klinik was operated by both corporations until April 26, 1963. On that date the agreement here at issue was entered into by plaintiff and defendant. By this 1963 agreement Mr. Wroten sold his shares of stock in defendant corporation to Mr. Stewart and the 1961 agreement was cancelled.
The April 26, 1963 contract contains a sale of a going business, a sublease by plaintiff to defendant of the Florida Boulevard premises, and the grant by plaintiff to defendant of a franchise or license to use the name "Kar Klinik". The terms of the sublease provided that defendant was to pay five (5%) percent of the gross monthly sales of Kar Klinik #1, based on the monthly state sales tax report, or a minimum of $525.00 per month, whichever was greater, as monthly rental. The term of the lease was from April, 1963 to August 31, 1974.
In February of 1972 defendant registered the trade name "Kar Klinik" with the Louisiana Secretary of State in its name. Mr. Leo Wroten, president of plaintiff corporation, learned of this action in the fall of 1972 at a meeting between Mr. Wroten, Mr. Randolph Stewart, Mrs. Stewart and Mr. Stewart's son. At this meeting a disagreement arose between Wroten and the Stewarts over the meaning of the 1963 contract.
Plaintiff filed this suit on November 8, 1972 alleging that defendant had breached several provisions of the contract and seeking cancellation of the lease and franchise agreement, the transfer and assignment of the trade mark and registration, damages in the amount of $20,000.00, reasonable attorney fees, legal interest and all costs. The alleged breaches of the agreement consisted of a failure by defendant to comply with certain requirements of the lease, namely, failure to keep the lights burning on the premises at all times, failure to furnish a certificate to customers on the necessity of all work done, and a failure to furnish plaintiff with certificates of insurance. Plaintiff also alleged the attempted appropriation of the trade mark and trade name and an anticipatory breach of the lease by a stated intention to quit the premises in February of 1973 as additional causes for cancellation of the lease and franchise.
Defendant answered the suit in December of 1972 denying the allegations of plaintiff and alleging that by virtue of plaintiff's suit its peaceful possession of the leased premises was disturbed, thereby entitling defendant to seek cancellation of the lease. Defendant left the premises as of January 1, 1973.
The trial court rendered judgment for the plaintiff holding defendant's actions in registering the trademark or trade name in its own name and in failing to comply with certain conditions of the lease and franchise agreement to constitute a breach of the agreement. Thus, the trial court declared the lease and franchise cancelled; ordered the defendant to transfer to plaintiff the registration of the name "Kar Klinik"; and awarded plaintiff damages in the sum of $1,050.53, plus twenty percent attorney's fees and legal interest.
From this judgment defendant has suspensively appealed asserting that the trial court erred in finding that the trademark or trade name had not been conveyed to it in the April, 1963 contract, in finding that plaintiff was entitled to the trademark, and in awarding damages and attorney fees for breach of the lease.

THE TRADEMARK OR TRADE NAME
The trial court found that the trademark or trade name "Kar Klinik" had not been permanently conveyed to defendant by the 1963 agreement and that plaintiff had only granted defendant the right to use the *756 name in the City of Baton Rouge via the franchise portion of the 1963 agreement. Thus, the trial court held that the franchise agreement was cancellable for cause and that the registration by defendant of the trade name as its own was sufficient cause to justify cancellation of the agreement.
Defendant contends on appeal that the trial court erred in finding that the trademark "Kar Klinik" was not permanently conveyed to it by the 1963 agreement. In support of this argument defendant cites the following language from paragraph 10 of the 1963 agreement:
"In and for the same consideration hereinabove expressed, grantor does by these presents grant, bargain, sell, convey, transfer, assign, set over and deliver unto grantee the following:
That certain going business known as `Kar Klinik # 1', located at 3960 Florida Boulevard in the City of Baton Rouge, Louisiana, including all its goodwill, equipment, goods, merchandise, supplies, cash on hand, open accounts, and other assets and credits excluding the items described in Paragraph 2'b' hereinabove."
In Paragraph 2b certain equipment in the business is described.
Defendant argues that under the above quoted provision of the 1963 agreement plaintiff sold to it the going business of Kar Klinik #1 including all of its assets and good will. Defendant contends that the trademark or trade name "Kar Klinik" was included in this sale as a part of the good will of the business, thereby resulting in defendant's obtaining the permanent use of the trademark or trade name.
In support of this contention defendant cites a long line of federal jurisprudence to the effect that a trademark cannot stand alone and apart from the good will it symbolizes and that no rights in or to a trademark can be transferred or assigned apart from the business with which the trademark is associated. See: Mister Donut of America, Inc. v. Mister Donut, Inc., 418 F.2d 838 (9th Cir. 1969) and the cases therein cited. Defendant also relies on a number of federal decisions which stand for the proposition that an assignment of a trademark divorced from the good will of the assignor constitutes an "assignment in gross" and conveys nothing to the assignee. See: Everett O. Fisk and Company v. Fisk Teachers' Agency, 3 F.2d 7 (8th Cir. 1925); American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619 (5th Cir. 1963); Storm Waterproofing Corporation v. L. Sonneborn Sons, 31 F.2d 992 (Dist.Ct. Del.Dist., 1929); Pepsico, Inc. v. The Grapette Co., 416 F.2d 285 (8th Cir. 1969), and Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457 (3rd Cir. 1968), cert. denied, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968). It is on the basis of this line of cases that defendant contends that no rights were conveyed or retained in the franchise agreement because plaintiff would have had to retain the business itself and its associated good will in order to hold a valid, assignable trademark.
Concerning these federal decisions upon which defendant relies, it is to be noted that most of the cases involved a situation wherein two competing businesses dealing in the same or a similar product or service were using trademarks or trade names deceptively similar to describe their product or service. In addition, the cases mainly dealt with the use of trademarks affixed to a vendible commodity and not with a trade name generally associated with a particular business conducted at a particular location. Also, the terms and provisions of the franchise agreement here under consideration are not found in any of the cited federal cases.
Defendant also cites the case of Cire and Delhomme v. DeGruy, 160 La. 336, 107 So. 130 (1926) in support of its contention that the sale of the good will of the going business included the sale of the trade mark or trade name "Kar Klinik". The DeGruy case involved the sale of a going business and the court held that such a sale included *757 the trade name of the business. However, the sale in the cited case did not include a franchise agreement as in the instant suit.
Paragraph 12 of the 1963 agreement reads as follows:
"In and for the same consideration hereinabove expressed, grantor does hereby set over and deliver to grantee the exclusive franchise within the City of Baton Rouge for the use of the trade name and trademark, Kar Klinik, and grantee agrees that it shall use the name Kar Klinik in advertising and sale of its services; and grantor agrees that grantee shall so use that name in such advertising and sale of services by grantee, grantor hereby franchising grantee as a franchised Kar Klinik dealer."
Paragraphs 13 and 14 of the 1963 agreement set up certain requirements to be followed by the grantee during the term of the franchise and paragraph 14 provides that the grantor has the option of cancelling the franchise for failure to follow the requirements set up in the agreement. Paragraph 15 of the agreement provides as follows:
"It is understood and agreed between the parties that in the event that this agreement and/or franchise is/are cancelled, the cancellation includes all the rights herein granted by the grantor to grantee under both the lease and the franchise."
Were it not for the above quoted provisions of the 1963 agreement concerning the terms of the franchise there might be merit in defendant's contention that the sale of the going business included a conveyance of the trademark and trade name Kar Klinik.
Louisiana law permits the utmost freedom of contract and generally the parties may contract under such terms and conditions as they may deem advisable and their contracts have the effect of law as between the parties provided the subject matter is not prohibited by law or is contrary to public policy and good morals. La.C.C. Article 1764; McNeely v. Baron Construction Co., 261 So.2d 333 (4th La. App.1972); Meinerz v. Treybig, 245 So.2d 557 (3rd La.App.1971), writ refused, 258 La. 580, 247 So.2d 395 (1971).
The above mentioned provisions of the agreement provide that cancellation may be sought and obtained for certain enumerated acts of the defendant. Plaintiff alleged and proved that defendant had violated certain of the provisions of the agreement resulting in the trial court's holding that the plaintiff was entitled to cancellation of the lease, which under Paragraph 15 of the agreement included cancellation of the franchise. This was the contract between the parties and we find nothing in its provisions to be illegal or against public policy.
The trial court held that the registration of the trademark or trade name in defendant's name constituted a substantial breach of the franchise agreement and justified its cancellation. With this conclusion we agree.
It is well settled that the mere registration of a trademark or trade name does not thereby create any substantive rights concerning its use, but confers only procedural advantages and remedies for the protection of the trademark or trade name. Metalock Corporation v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (4th La.App. 1972), writ denied, 262 La. 189, 262 So.2d 788 (1972); Couhig's Pestaway Company, Inc. v. Pestaway, Inc., 278 So.2d 519 (3rd La.App.1973).
In the 1963 agreement paragraph 12 provides that defendant was granted the franchise of using the name Kar Klinik ". . . within the City of Baton Rouge. . .". Defendant's registration application filed in February of 1972 states that the trademark and trade name Kar Klinik *758 designates the term used by defendant for ". . . his auto repair business and/or businesses located within the state of Louisiana." Thus, defendant clearly violated the terms of the franchise agreement by registering the trade name for use outside of the City of Baton Rouge.
In support of its contention that the sale of the going business contained in the 1963 agreement did not include the conveyance of the trade name Kar Klinik, plaintiff cites the case of Vonderbank v. Schmidt, 44 La.Ann. 264, 10 So. 616 (1892). In the case the plaintiff sold a going business, the Hotel Vonderbank, including the good will of the business, to defendant's vendor. The Supreme Court held that the name of the hotel was not transferred as part of the sale of the going business. The cited case indicates a distinction between a trade name and a trademark.
Concerning the registration of trade names and trademarks, L.R.S. 51:211 provides a distinct definition for each. A trademark is defined in L.R.S. 51:211, subd. A as follows:
"A. The term `trademark' as used herein means any work, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others."
A trade name is defined in L.R.S. 51:211, subd. D as follows:
"D. The term `trade name' means a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others."
The federal jurisprudence cited by defendant mainly deals with trademarks affixed to a product. At issue herein is a trade name, Kar Klinik, designating a particular business at a particular location. According to the Vonderbank case, supra, one may sell a going business without the name itself passing to the vendee. This would be particularly true in the instant case where the contract between the parties specifically provided for only a franchise of the trade name separate and apart from the sale of the business.
Therefore, we concur with the conclusion reached by the judge a quo that the registration of the trade name Kar Klinik by defendant constituted a breach of the franchise agreement compelling cancellation of the same.

THE LEASE
Concerning this issue, we note initially that the plaintiff filed suit in November of 1972 seeking cancellation of the lease on the grounds that defendant had committed several acts prohibited by the lease agreement which provided that cancellation could be obtained therefor. Defendant answered the suit in December of 1972 also requesting cancellation of the lease for the alleged disturbance by plaintiff of defendant's right to peaceful possession of the leased premises. Thus, both parties seek cancellation of the lease which had a term set forth in the 1963 agreement running up to August 31, 1974.
We find, as did the judge a quo, that plaintiff has proved that the defendant violated the conditions set forth in paragraph 14, sections c and g. Defendant had failed to provide the customer certifications required under paragraph 14c and had not left the lights on at all times on the premises as required by paragraph 14g. As aptly stated by the judge a quo in written reasons for judgment:
"It is true that the questions of the certifications to be given to the customers and the leaving on of the lights at all times seem to be of relatively minor importance but they were required by stipulations of the contract and the breach thereof by the terms could lead to cancellation. Considered separately and alone, in view of plaintiff's inaction, they might not justify the drastic recourse of cancellation, but collectively *759 and together with the appropriation of the trade name and trade mark they do."
Accordingly, we agree with the findings of the trial court in this regard and concur with the ruling of the trial court that the lease ought to be deemed cancelled.
Concerning the damages sought by plaintiff for breach of the lease, the trial court awarded $4,594.20 as damages for the breach of the lease. The trial court also awarded plaintiff the sum of $1,050.53 as rental due by the defendant to the plaintiff as of January 1, 1973, the date upon which the trial court declared the lease cancelled. The damage award by the trial court was based upon the difference between the average monthly rental of $754.71 and the minimum monthly rental provided in the lease agreement of $525.00. This figure of $229.71 was multiplied by 20, ($4,594.20) the number of months remaining on the lease after January 1, 1973.
Defendant contends on this appeal that the trial court erred in making any award for damages for breach of the lease. This contention is based upon the fact that both plaintiff and defendant sought cancellation of the lease in this suit.
Plaintiff has answered the appeal of defendant and contends that the damage award should be increased to reflect an award based on the average monthly rental of $754.71. Plaintiff also contends that the trial court erred in holding the lease cancelled as of January 1, 1973.
Our review of the record in regard to this issue convinces us that the trial court was correct in declaring the lease cancelled as of January 1, 1973. On that date the defendant actually left the leased premises and set up his business elsewhere. In the case of Lemoine v. Devillier, 189 So.2d 694 (3rd La.App. 1966), writ denied, 249 La. 751, 190 So.2d 913 (1966), the lessor and lessee both sought cancellation of a lease. The court stated that the cancellation of leases is subject to judicial control according to the circumstances and that when the defendant filed his answer also seeking cancellation of the lease, the lease must then be considered at an end.
Thus, under the authority of the above cited decision we find that the trial court was correct in ordering the lease cancelled at the end of the month in which defendant filed his answer.
However, as to the damage award we find that the trial court erred in granting damages beyond the rent due as of January 1, 1973. Both plaintiff and defendant sought cancellation of the lease agreement. The lease came to an end when the defendant answered also seeking cancellation. The plaintiff should not be allowed both a cancellation and damages for lost rentals. Lemoine v. Devillier, supra.
Plaintiff is entitled to the rentals due and owing as of January 1, 1973, the date the lease ended. That defendant owed $1,001.53 in back rentals as of that date was clearly established at trial. Therefore, that amount is the proper figure to be awarded to the plaintiff. In addition, the trial court awarded attorney's fees in the amount of twenty percent of the award. The award of attorney's fees is clearly provided for in the lease agreement.
By answer to the appeal, plaintiff also raises the issue of damages for frivolous appeal. In view of our determination that the award of damages should be reduced and the seriousness of the question concerning the rights to the trade name, we find this to be an inappropriate case for damages for frivolous appeal.
Accordingly, for the above reasons, the judgment of the district court is hereby amended to reflect an award to plaintiff in the total sum of $1,050.53, plus attorney's fees thereon in the amount of twenty percent, and legal interest thereon from date of judicial demand, until paid. In all other respects the judgment of the trial court is affirmed at appellant's costs.
Amended and affirmed.
NOTES
[*] TUCKER, J., died on the 25th day of January, 1974.