365 So.2d 839 (1978)
BUYERS AND TRADERS SERVICE, INC., Plaintiff-Appellant,
v.
Randolph L. STEWART, Sr., A/K/A Randy Stewart et al., Defendant-Appellee.
No. 12236.
Court of Appeal of Louisiana, First Circuit.
October 9, 1978.
Bailey E. Chaney, Baton Rouge, of counsel for plaintiff-appellant, Buyers & Traders Service, Inc.
Victor L. Roy, III, Baton Rouge, of counsel for defendant-appellee, Randolph L. Stewart, Sr. A/K/A Randy Stewart, et al.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
The plaintiff, Buyers & Traders Service, Inc. (Buyers & Traders) brought suit to enjoin the defendants, Car Maintenance Specialists of Baton Rouge, La., Inc. (Car Maintenance) and Randolph L. Stewart, Sr., president of Car Maintenance, from using the trade name "Kar KliniK." Plaintiff also sought to recover any profits defendants had derived from use of the trade name, as well as an award for losses suffered by reason of the alleged trade name infringement.
The trial court granted the injunction but refused to award any monetary damages. Plaintiff's right to an injunction is not presently contested. Plaintiff appeals that part of the judgment denying it recovery for damages and lost profits. We affirm.
The situation out of which the dispute in this case arose was the subject of an earlier suit between Buyers & Traders and Car Maintenance. The decision in the prior litigation is reported at 290 So.2d 753 (La.App. 1st Cir. 1974), writs refused 294 So.2d 550 (La.1974).
In the first suit, Buyers & Traders sought and was granted the cancellation of a lease and franchise agreement between the parties. Buyers & Traders previously had operated an automobile repair business on Florida Boulevard in the City of Baton Rouge under the registered trade name "Kar KliniK." In 1963 Buyers & Traders sold the going business to the defendant *840 corporation. The agreement also included an eleven year sublease of the Florida Boulevard premises and a franchise to use the name "Kar KliniK."
In November of 1972, two years before the expiration of the lease, Buyers & Traders filed suit for cancellation, alleging that Car Maintenance had breached the lease-franchise agreement. Although Car Maintenance denied any breach on its part, it did not oppose the cancellation of the lease; and, in fact, on January 1, 1973, it vacated the premises and moved to a location on Choctaw Drive. Car Maintenance did maintain, however, that in the 1963 agreement it had purchased all rights to the trade name. It continued throughout the litigation to operate and advertise its relocated repair shop under the name "Kar KliniK." This use of the trade name is the subject of the current suit.
It was determined by this court in the prior suit that Car Maintenance had purchased only a franchise to use the name and that the lease-franchise agreement was cancelled as of January 1, 1973.
In the present suit, the defendants have stipulated to an injunction prohibiting their use of the trade name. The dispute centers on plaintiff's right to an award for damages and lost profits resulting from the defendants' wrongful use of the trade name after January 1, 1973, the date of the dissolution of the franchise.
It is undisputed that defendants operated and advertised under the name "Kar KliniK" until some time in May, 1974. It was shown that when defendants vacated the Florida Boulevard building, signs were painted on the windows indicating that the Kar KliniK had moved to Choctaw. The premises remained empty for approximately one and one-half years until the opening of a new Kar KliniK by Certified Auto Testing Repairs, Inc. (Auto Testing), a corporation owned by Leo Wroten, the sole shareholder of Buyers & Traders.
The parties in this case assume that the applicable law is R.S. 51:211, et seq. (Trade Marks and Trade Names) and particularly Secs. 222 and 223 thereof, which provide:
"§ 222. Infringement
Any person who shall:
(1) Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this Sub-part in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
(2) Reproduce, counterfeit, copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in conjunction with the sale or other distribution in this state of such goods or services;
shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in this Sub part, except that under Subsection B hereof the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive."
"§ 223. Remedies
Any owner of a mark registered under this Sub-part may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display or sale as may be by the said court deemed just and reasonable, and may require the defendants to pay to such owner all profits derived from and/or all damages suffered by reason of such wrongful manufacture, use, display or sale; and such court may also order that any such counterfeits or imitations in the possession or under the control of any defendant in such case, be delivered to an officer of the court, or to the complainant, to be destroyed.

*841 The enumeration of any right or remedy herein shall not affect a registrant's right to prosecute under any penal law of this state."
We note in passing that the applicability of these statutes to a case of trade name infringement might be subject to question. Cf. N.O. Checker Cabs, Inc. v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944); Robinson, 22 La.Bar J. 179 (1974); But cf. The Metalock Corp. v. Metal-Locking of La., Inc., 260 So.2d 814 (La.App. 4th Cir. 1972); Gallow v. Safeway Brake Shops of La., Inc., 140 So.2d 912 (La.App. 4th Cir. 1962).
However, in this case it is not necessary to rule on the scope of the statutes as the law and the outcome are the same whether we look to R.S. 51:222-23 or to the general Louisiana law on trade name appropriation which was developed by the courts under C.C. art. 2315 to prevent unfair competition and to protect the public from deception.
"It is settled in our law that trade names will be protected against unfair use, imitation, or simulation. The law's protection against unfair competition by the use of another's trade name rests upon the deceit or fraud which the newcomer in the business practices, not only upon the one already established in the business but also upon the public. A trade name, though not the subject of a technical trademark, will be as fully protected as if it had been so registered, on the ground of unfair trade. Priority of appropriation of the trade name determines the question as to which one of the conflicting claimants is entitled to use it." (Citations omitted.)

Boogie Kings v. Guillory, 188 So.2d 445, 447 (La.App. 3d Cir. 1966)
Defendants' use of the trade name after January 1, 1973, the date the franchise terminated, was an infringement for which plaintiff has a right of redress.
Buyers & Traders seeks as an element of damages the profits defendants derived from their use of the name "Kar KliniK." In proof of its claim, plaintiff offered into evidence the balance sheets and profit and loss statements of Car Maintenance for the fiscal years covering the period of the infringement. These documents show the defendant corporation had a net loss during the relevant period.
Plaintiff argues in its brief that many of the deductions from gross receipts made in these financial statements are improper when calculating profits for the present purpose. While some of the arguments may have merit as a matter of legal principle, there is insufficient proof of the facts upon which the arguments rest. For instance, plaintiff suggests that a deduction labeled "insurance" should not be allowed because "it could be only life insurance, profiting the individual defendant" but no attempt was made to prove this supposition.
As plaintiff has failed to prove that the defendant corporation earned any profits, we affirm the trial court's ruling on this issue. Additionally, there was insufficient evidence to segregate the receipts that were derived from the wrongful appropriation from those due to other factors. Stewart testified that when he changed the name of his shop from Kar KliniK to Car Medic, there was no appreciable difference in his volume of business.
The second element of damages claimed by plaintiff is for losses suffered by plaintiff by reason of defendant's infringement. On this question too we affirm the trial court's denial of an an award, as we conclude that plaintiff failed to prove the causal relationship between the wrongful appropriation and the reduced volume of business done by the Kar KliniK opened in the Florida Boulevard location approximately one and one-half years after defendants left.[1]
Plaintiff's proof on this issue consisted mainly of a comparison of the gross receipts *842 of the two businesses; but no analysis was made of other features of the two businesses which might explain the discrepancy in income. The most plausible explanation for the difference in the amount of sales is that defendants had been in the auto repair business continuously for more than nine years, while plaintiff's operations had begun after a gap of one and one-half years.
Mr. Wroten testified that some customers at the new Florida Kar KliniK told him they previously had gone to the Kar KliniK on Choctaw. However, there was virtually no evidence to indicate the influence that defendants' use of the trade name had on these customers.
As indicated above, we agree with the trial court that plaintiff has failed to prove any connexity between defendants' wrongful use of the trade name and any damages suffered by plaintiff.
Accordingly, for the above reasons, the judgment of the district court is affirmed. All costs incurred in the district court are assessed against the defendants-appellees, and all costs incidental to this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] Even if plaintiff had succeeded in proving the new Kar KliniK suffered because of the trade name infringement, further proof would be needed to show how this had damaged the plaintiff corporation which is a distinct entity from Auto Testing, the corporation which operates Kar KliniK under a lease and franchise from the plaintiff.