**UNCAS MANUFACTURING COMPANY, Plaintiff, Appellant,**

v.

**CLARK & COOMBS COMPANY, Defendant, Appellee,**

No. 5983.

United States Court of Appeals First Circuit.

Nov. 16, 1962.

Herbert B. Barlow and Herbert B. Barlow, Jr., Providence, R. I., with whom Barlow & Barlow, Providence, R. I., was on brief, for appellant.

Jerome B. Spunt, Providence, R. I., with whom Andrew P. Quinn and Letts & Quinn, Providence, R. I., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

In February 1951 The R. L. Griffith and Son Company of Providence, Rhode Island, obtained registration under the Lanham Act, 60 Stat. 427 et seq., 15 U.S.C. Chapter 22, of the word "BARODA" in class 28, Jewelry and Precious-Metal ware, for "Imitation Stones for Jewelers' Use, Sold either Alone or Mounted in Jewelry, such as Finger Rings, etc." Griffith recited in its application that it had first used the mark in interstate commerce in 1912, that the mark had been used by it in such commerce exclusively and continuously for the last five years, and that it owned a previous registration of the mark dated April 10, 1934. Griffith applied the mark only to jewelry items set with a 32 facet, metal tipped, white imitation stone, actually glass, manufactured in Europe, which it purchased on the open market where it was freely available to all.

Originally Griffith mounted the imitation stone in men's scarf pins, women's earrings and finger rings. But scarf pins went out of style years ago and later so also did earrings set with the "stone." In recent years Griffith used its BARODA mark only in connection with the imitation stone set in finger rings. Griffith's business in such finger rings, however, declined during the 1950's, apparently for the reason that it did not modernize its settings to conform to changing style, perhaps because it was more interested during that period in its expanding business in hoop earrings and bracelet charms.

During 1955 the defendant Clark & Coombs Company, another jewelry manufacturer in Providence, began to manufacture and sell finger rings set with the same 32 facet, metal tipped white imitation stones which it labeled "IMPORTED BARODA." In January 1957 counsel for Griffith wrote to the defendant complaining of its use of the word BARODA in connection with the sale of its rings and threatening legal proceedings unless it desisted. Nevertheless the defendant, insisting upon its right to use the name, continued to do so. It heard no more from Griffith or its counsel and later in 1957 at least two other local jewelry manufacturers began to sell like finger rings similarly marked without objection by Griffith.

In September 1958 Griffith merged with Irons and Russell Company, another Rhode Island corporation engaged in the jewelry manufacturing business in Providence, the latter assuming all of Griffith's liabilities and acquiring all of Griffith's assets. There was no specific mention in the transaction of the trade name BARODA. Indeed, the executive officer of Irons and Russell who acted for it in the transaction testified without contradiction that at the time of the merger he did not know that Griffith had been making and selling finger rings and did not discover the existence of the trade mark BARODA until after the merger. He testified that Irons and Russell absorbed Griffith only to acquire its business in hoop earrings and bracelet charms and that it had no intention of making and selling BARODA rings or rings of any description. And it is clear and undisputed that Irons and Russell did not go into the ring business after the merger, but on the contrary, when its management discovered that as a result of the merger it had acquired a quantity of tools used for the manufacture of finger rings and a small inventory of the 32 facet, metal tipped, white imitation stones, it immediately undertook to dispose of those assets. It offered the imitation stones it had acquired from Griffith to the defendant at their inventory value of $268.00 but the defendant was not interested and the "stones" were eventually sold to a dealer for $100.00. Early in November it sold Griffith's ring manufacturing tools to Esposito Jewelry, Inc., a local concern, and with them sample boards carrying between 2000 and 2500 rings, some set with "stones" tagged "THE BARODA GEM," which were used to identify the tools used to make different styles of rings. Later it gave Esposito a list of Griffith's former ring customers which it found after the merger in Griffith's records.

Irons and Russell also offered the mark BARODA to Esposito but it was not in-

terested, and on December 5, 1958, about a month after the sale to Esposito, Griffith executed a "confirmatory" assignment to Irons and Russell purporting to sell, assign and transfer "nunc pro tunc as of the date of consolidation, to wit on or about September 29, 1958," " * * * all of its right, title and interest in the mark together with the goodwill of the business connected with the use of and symbolized by" it. And on the same day Irons and Russell assigned the mark in similar terms, but not "nunc pro tunc," to the plaintiff. Both assignments were recorded in the United States Patent Office on December 12, 1958.

On the basis of these facts viewed in the light of subsidiary ones to be mentioned hereinafter, the court below found that Griffith had abandoned the mark prior to its merger with Irons and Russell, and that even if it had not, Irons and Russell had abandoned the mark since it had no intention of engaging in the ring business and as soon as possible after the merger it had sold Griffith's ring-making tools, rings and imitation stones for rings. Furthermore, the court found that since at the time of the assignments Griffith was out of the ring business altogether and Irons and Russell was not in the ring business, had no intention of engaging in that business and had sold all the rings, ring-making tools and inventory of imitation stones connected therewith, there was no ring business or good will of that business in connection with which the mark had been used, so that the assignments were in gross and hence invalid both at common law and under § 10 of the Lanham Act, 15 U.S.C. § 1060 quoted in material part in the margin.[1] On the basis of these findings the court below entered the judgment from which the plaintiff below has appealed, wherein it dismissed the plaintiff's complaint and, on a counterclaim of the defendant, ordered cancellation of

---

1. "A registered mark * * * shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark * * *."

Irons and Russell's assignment of the mark to the plaintiff-appellant.[2]

The court below found the evidence convincing that the last sales of BARODA marked rings by Griffith were sales of samples in April 1956, and that there was no credible evidence of any sales of rings so marked at any time thereafter. The appellant undertakes to challenge these findings by pointing to undisputed evidence that Griffith's salesmen carried rings bearing the mark in their sample cases up to the time of the merger with Irons and Russell and the testimony of the man in charge of sales for Griffith that he, as a salesman, had personally sold at least a gross of BARODA marked rings during each of the years 1956, 1957 and 1958 to the date of the merger. The challenge is unavailing.

The record is silent as to when Griffith stopped manufacturing its BARODA rings. Nor is there any documentary evidence of Griffith's sales of such rings, its business records having been lost or destroyed. But evidence of the attempts of Griffith's salesmen to sell the rings during 1956, 1957 and 1958 is not conclusive evidence of lack of intention to abandon the mark. Such attempts to sell may well have been directed to disposal of the remaining stock of an abandoned line of merchandise instead of an intention to continue the line. And this interpretation of the evidence is borne out by Griffith's failure to follow up its letter of January 1957 to the defendant protesting the latter's use of the word BARODA, by Griffith's failure to protest the use of the word by other jewelry manufacturers in the area later in that year and perhaps also by Griffith's failure to modernize the style of its BARODA line to meet changing trends in style, there being ample evidence that manufacturers of jewelry of the kind under consideration of necessity had to change styles constantly

if they expected to stay in business. Nor is the testimony of sales of BARODA rings by Griffith's chief salesman during 1956, 1957 and 1958 conclusive. It was well within the province of the court below to disbelieve his testimony, particularly in view of the testimony on deposition of the persons named by the salesman as purchasers of the BARODA marked rings during the later years that they had not bought any from Griffith since the early 1950's. The finding of abandonment of the mark by Griffith is supported by substantial evidence. It is certainly not "clearly erroneous," Rule 52(a) Fed.R.Civ.P., and this finding disposes of the case under § 45 of the Lanham Act, 15 U.S.C. § 1127, quoted so far as material in the margin.[3]

Taking this view there is no need for us to consider the court's conclusion that Irons and Russell had also abandoned the mark. Nor is there any need for us to consider the court's further conclusion that the assignments of the mark were in gross, that is to say, not connected with any transfer of good will, and hence invalid at common law and under § 10 of the Lanham Act, supra.

The appellant's further contention that the court below had no authority to cancel the recording in the Patent Office of the deed of assignment of the mark to it by Irons and Russell rests upon a misconception of that court's judgment. It did not order anything expunged or removed from the records of the Patent Office. What it did was to order rectification of the register of marks to reflect the action it had taken in the case as authorized by § 37 of the Lanham Act, 15 U.S.C. § 1119, which provides:

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registra-

---

2. The defendant has not appealed from the denial for lack of proof of the prayers of a second counterclaim.

3. "A mark shall be deemed to be 'abandoned'—

"(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment."

tions, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby."

Judgment will be entered affirming the judgment of the District Court.