380 So.2d 1227 (1980)
GIVENS JEWELERS, INC., Plaintiff-Appellant,
v.
Douglas J. GIVENS, Defendant-Appellant.
No. 14007.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1980.
Rehearing Denied February 29, 1980.
*1228 Donald R. Miller, Shreveport, for plaintiff-appellant.
James B. Wells & Associates by A. R. Snell, Bossier City, for defendant-appellant.
Before PRICE, MARVIN and JONES, JJ.
En Banc. Rehearing Denied February 29, 1980.
MARVIN, Judge.
This controversy between two brothers, who were in the jewelry business together until 1978, arises over the use of the trade name and the trademark here reproduced:

The lower court rejected plaintiff's demand to enjoin Douglas J. Givens from using the trade name but granted plaintiff's demand to enjoin Douglas J. Givens from using the distinctive mark, which was registered in 1978 under Louisiana law by the plaintiff corporation owned by F. A. Givens. We reverse and reject all demands.
The brothers, F. A. and D. J., did business as a partnership (1951-1963) and as jointly owned corporations, Givens Jewelers, Inc. (1963) and Givens Jewelers of Bossier, Inc. (1966). In 1975 they amicably divided their interests with F. A. taking the first corporation, which did business in a Shreveport store, and D. J. taking the second corporation, which did business in a Bossier City store.
*1229 In 1953, D. J. and the partnership's advertising agent designed the trademark, essentially as depicted above. Before and after the stores were legally separated in 1975, D. J. Givens frequently advertised for both stores in one advertisement using the trade name and sometimes the trademark.[1] F. A. objected occasionally to D. J.'s advertisement of particular merchandise which was not stocked in quantity in the Shreveport store. After the stores were legally separated in 1975, both stores continued to share computer, bookkeeping and collection services as they had before 1975.

I 1978 a location for a jewelry store became available in the Eastgate Shopping Center in Shreveport. After F. A. declined D. J.'s suggestion that F. A. open an Eastgate store, D. J. opened the store, incorporated it as Givens Jewelers of Eastgate, Inc., and began advertising. After registering the Givens Jewelers mark for his corporation under LRS 51:211 et seq. on July 20, 1978, F. A. then brought this suit under LRS 51:223 for damages and sought to enjoin D. J.'s further use of the name and the mark.[2] *1230
*1231 The trial court correctly denied the enjoining of D. J.'s use of the trade name Givens Jewelers. The word jewelers is descriptive of the business conducted by both litigants. Givens is the surname of both. The name Givens Jewelers is not distinctive, and, under the circumstances shown, is not subject to exclusive appropriation by either litigant. The public is not confused, mistaken or deceived, either by billboard advertisements, which do not designate a store location, or by printed advertisements, which do designate store locations, when the advertisements simply state that Givens Jewelers sells certain merchandise. 87 C.J.S. Trademarks §§ 33, 44; LRS 12:23(C) & (F); White v. White, 68 So.2d 648 (La. App. 1st Cir. 1953); Tharp-Bultman-Sontheimer Co. v. Tharp-Sontheimer-Tharp, Inc., 147 La. 765, 85 So. 906 (1920). See also Couhig's Pestaway Company, Inc. v. Pestaway, Inc., 278 So.2d 519 (La.App. 3d Cir. 1973).
Apparently giving substantive effect to F. A.'s registration of the mark in 1978, the trial court erred in enjoining D. J. from using the mark reproduced above as he had been before and after the stores were legally separated.
The mere registration of a trade or service mark confers only procedural rights and does not create or confer substantive, proprietary rights of ownership in the mark. Substantive rights in a mark arise only from the use of the mark and not from registration. Buyers & T. Service, Inc., v. Car Maintenance Spec., etc., 290 So.2d 753 (La.App. 1st Cir. 1975); Couhig's Pestaway, supra. See Robinson, Tradenames and TrademarksState and Federal: Some Random Observations, XXII La.B.J. 179, 182-183 (1974).
"The registry of a trade mark or a service mark confers only procedural advantages, and not substantive rights. It confers no greater proprietary rights than exist without registration, and thus the registration by one party, or the lack of registration by the other, is not decisive as to the right of either party to use the trade mark or trade name. Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La.App. 4 Cir. 1962); Metalock Corp. v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La.App. 4 Cir. 1972)." 278 So.2d at 521
F. A. and D. J., as partners before the 1963 incorporation of Givens Jewelers, Inc., had the right to use the distinctive mark. Even after incorporation in 1963, and after the legal split or separation in 1975, D. J. generally directed the use of the mark and used it for the Bossier store. F. A. has not acquired any better right, substantively, to the use of the mark than D. J. Even assuming otherwise, F. A. allowed unrestricted and indiscriminate use of the mark by D. J. after the legal split of their relationship. D. J. used the mark previous to F. A.'s registering it. LRS 51:212(5), 211(H). See also Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972 (1905); Tharp-Bultman-Sontheimer Co., supra; 72 A.L.R.3d 8, § 17. F. A.'s right to use the mark was not exclusive of D. J.'s right. Exclusivity of use is a prerequisite to an injunction in trademark, tradename cases. See Metalock Corp. v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La.App. 4th Cir. 1972); New Orleans Coffee Co. v. American Coffee Co., *1232 124 La. 19, 49 So. 730 (1909); Huth v. Rosenzweig, 27 So.2d 742 (La.App.1946). See also Uncas Manufacturing Company v. Clark & Coombs Company, 309 F.2d 818 (C.A. 1st Cir. 1962); Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838 (C.A. 9th Cir. 1969); AnnotationTrademark or Tradename Abandonment, 3 A.L.R.2d 1265; Robinson, XXII La.B.J., supra.
Injunctive relief and damages are available against a person who violates a distinctive mark or name previously appropriated and used by another. This was true even before the enactment of the Louisiana Trademark Law. Handy v. Commander, 49 La.Ann. 1119, 22 So. 230, 235 (1897). See Robinson, supra, summarizing and citing authority from Louisiana and elsewhere. These remedies exist as a part of the law of unfair competition. Even the use of one's own name in business is not permitted if that use is with the fraudulent intent of appropriating the business of another of the same name which was acquired and established by the previous use of that name. See New Orleans Checker Cabs v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944). See Robinson, supra, pp. 187-188. See 3 A.L.R.2d 1265, supra. Because of D. J.'s use of the name and the mark previous to F. A.'s registration of the mark, D. J.'s use of the name and the mark afterwards cannot be enjoined. See additionally LRS 51:212(6), supra; Couhig's Pestaway Company, Inc., supra.
That part of the judgment granting plaintiff's demands to an injunction and to damages is reversed. That part of the judgment rejecting plaintiff's other demands is affirmed. All costs are assessed against plaintiff.
REVERSED in part, AFFIRMED in part.
NOTES
[1] The record contains reproductions of many advertisements. Approximately eight were run in 1976, five in 1977, and three in 1978. All of these advertisements except the one of August 30, 1978, were similar to this one of May 16, 1978, advertising the Shreveport store and the Bossier store:

Partially reproduced are the last two advertisements before suit mentioning the Eastgate store:

[2] Pertinent are these sections of LRS Title 51:

"§211. Definitions
"A. The term `trademark' ... means any work, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others.
"B. The term `service mark'... means a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others.
"C. The term `mark' as used herein includes any trademark or service mark entitled to registration under this Sub-part whether registered or not, including the designation of a particular place of business.
"D. The term `trade name' means a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others.
* * * * * *
"H. For the purposes of this Sub-part, a trademark shall be deemed to be `used' in this state (1) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and such goods are sold or otherwise distributed in the state, and (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in this state."
"§ 212. Registrability
"A mark by which the goods or services of any applicant for registration may be distinguished from the goods or services of others shall not be registered if it:
* * * * * *
"(5) Consists of a mark which, (1) when applied to the goods or services of the applicant, is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods or services of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, or (3) is primarily merely a surname provided, however, that nothing in this paragraph (5) shall prevent the registration of a mark used in this state by the applicant which has become distinctive of the applicant's goods or services. The secretary of state may accept as evidence that the mark has become distinctive, as applied to the applicant's goods or services, proof of continuous use thereof as a mark by the applicant in this state or elsewhere for the five years next preceding the date of the filing of the application for registration; or
"(6) Consists of or comprises a mark which so resembles a mark registered in this state or a mark or trade name previously used in this state by another and not abandoned, as to be likely, when applied to the goods or services of the applicant, to cause confusion or mistake or to deceive."
"§ 214. Application for registration
"Subject to the limitations set forth in this Subpart, any person who adopts and uses a mark in this state may file ... an application for registration of that mark setting forth, but not limited to, the following information:
* * * * * *
"(4) A statement that the applicant is the owner of the mark and that no other person has the right to use such mark in this state either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive or to be mistaken therefor."
"§ 219. Cancellation
"The secretary of state shall cancel from the register:
* * * * * *
"(4) Any registration concerning which a court of competent jurisdiction shall find
"(a) That the registered mark has been abandoned,
"(b) That the registrant is not the owner of the mark,
"(c) That the registration was granted improperly,
"(d) That the registration was obtained fraudulently,
"(e) That the registered mark is so similar, as to be likely to cause confusion or mistake or to deceive, to a mark registered by another person in the United States Patent Office, prior to the date of the filing of the application for registration by the registrant hereunder, and not abandoned; provided, however, that should the registrant prove that he is the owner of a concurrent registration of his mark in the United States Patent Office covering an area including this state, the registration hereunder shall not be cancelled.
"(5) When a court of competent jurisdiction shall order cancellation of a registration on any ground."
"§ 222. Infringement
"Any person who shall:
"(1) Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this Sub-part in connection with the... advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
"(2) Reproduce, counterfeit, copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to ... advertisements intended to be used upon or in conjunction with the sale or other distribution in this state of such goods or services; shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in this Sub-part, except that under Sub-section B hereof the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive."
"§ 223. Remedies
"Any owner of a mark registered under this Sub-part may proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display or sale as may be by the said court deemed just and reasonable, and may require the defendants to pay to such owner all profits derived from and/or all damages suffered by reason of such wrongful manufacture, use, display or sale; and such court may also order that any such counterfeits or imitations in the possession or under the control of any defendant in such case, be delivered to an officer of the court, or to the complainant, to be destroyed.
"The enumeration of any right or remedy herein shall not affect a registrant's right to prosecute under any penal law of this state."