|1SEXTON, Judge.
Plaintiffs, Leonard Faulkner and his son, Todd Faulkner, filed suit to enjoin the defendant, Ronald A. Jones, d/b/a Faulkner Air Conditioning Service Company, from using the name “Faulkner” and the Faulkner logo in his air conditioning installation and service business and for damages arising from the alleged confusion such usage had wrought. Defendant answered with an exception of res judicata on grounds that plaintiffs claim was a compulsory counterclaim that should have been raised in a previous suit by defendant *256 against one of the plaintiffs, Todd Faulkner, over the latter’s use of the Faulkner name in his competing business. Further answering, Jones claimed the right to use the Faulkner name and logo by virtue of his acquisition of the business which had operated under the Faulkner name since its founding many years earlier by the plaintiffs uncle, Harold Faulkner, and which had continued to operate under the Faulkner name under subsequent owners who were not Faulkners. The trial court denied defendant’s exception of res judicata and held that Jones had not acquired the right to use the Faulkner name when he purchased the business. From a judgment enjoining him from using the Faulkner name and logo in his air conditioning trade, defendant appeals. We reverse.
Many years before this dispute arose, Harold and Erma Faulkner owned an air conditioning installation and service business in Ruston incorporated under the name Faulkner Corporation and generally doing business under the name “Faulkner Air Conditioning.” In the same building occupied by Faulkner Corporation, located at 1206 Farm-erville Road in Ruston, Louisiana, Harold’s brother, Leonard Faulkner, owned and operated a television and radio repair service called Faulkner TV Sales and Service or sometimes Faulkner TV-Radio Sales & Service. Over the years, both brothers used various logos bearing the |2Faulkner name in their advertising and letterheads, but eventually settled on the Faulkner logo reproduced below, the ownership rights of which are disputed in the instant suit.
[[Image here]]
By “Act of Sale of Business” dated July 28, 1986, Harold and Erma Faulkner sold all the stock in Faulkner Corporation to Jack Lann. In addition, the agreement conveyed “whatever right, title and interest which they may have in and to the assets of the business known as Faulkner Corporation, which assets are listed on Exhibit ‘A’ attached hereto and made a part hereof.” Exhibit “A” contains a list of all tangible property owned by the corporation, including equipment, parts, furnishings, trucks, and literature. All accounts receivable and all bank accounts in the corporate name were transferred to Lann. As part of the agreement, and in exchange for payment of eleven thousand dollars, Harold Faulkner agreed not to compete in the air conditioning business for a period of one year within a twenty-five mile radius of the existing business. On the same day, an “Act of Sale with Assumption of Mortgage Indebtedness” was executed by the parties conveying an undivided one-half interest of Harold and Erma Faulkner’s one-half undivided interest in the building located at 1206 Farmerville Road. Jack Lann continued to operate the business from the same location as his predecessor under various trade names, including Faulkner Corporation, Faulkner Service Company, Faulkner Air Conditioning, Faulkner |3Air Conditioning and Heating, and Faulkner Air Conditioning Sales & Service. The phone number of the corporation remained the same.
At some point toward the end of Jack Lann’s ownership of the business. Mr. Lann apparently moved the location of the business from 1206 Farmerville Road to his home. Lann continued to operate the business under the trade name of his predecessor.
By contract dated September 1, 1990, Jack Lann, as president of Faulkner Corporation,[1] *257 assigned the residential air conditioning, heating, electrical and plumbing part of the business, along with some small commercial customers, to Mr. Frank Goodgoin. The agreement specifically gave Mr. Goodgoin the right to use the telephone number that Harold Faulkner and Jack Lann had used. Mr. Goodgoin did not purchase any liabilities or assume responsibility for work previously performed by the corporation. An amendment to the contract dated September 1, 1990, simply states:
DOES HEREBY AMEND ORIGINAL AGREEMENT BY THE FOLLOWING ADDITIONAL CHANGES:
FAULKNER SERVICE COMPANY
FAULKNER HEATING AND AIR CONDITIONING COMPANY
FAULKNER NAME IN ANY WAY ASSOCIATED WITH HEATING, AIR CONDITIONING, ELECTRICAL OR PLUMBING RESERVED FOR OWNERS AS PREVIOUS AGREEMENT:
*JACK LANN AGREES TO SIGN PROPER PAPERS NECESSARY TO PROTECT THE ABOVE.
|4The amendment is signed by Jack Lann and witnessed by the defendant. Goodgoin did not sign the agreement, but testified that he typed it.[2]
At the same time or shortly after the assignment agreement between Lann and Goodgoin, the defendant, Ronald A. Jones, became co-owner of the business with Good-goin. The business was subsequently moved to a location on Goodgoin Road in Ruston. The business continued to operate under the Faulkner name.
Then, one year later, by contract dated September 30, 1991, Goodgoin sold his one-half interest in Faulkner Service Company to Jones. An additional contract dated the following day, October 1, 1991, conveyed to Jones the right and ownership to “logos, customers, and related services as secured through ... Faulkner Service Company, including assignment of agreements signed by Jack Lann, dated 9-1-90.” Jones continued to use the Faulkner name in a variety of ways associated with the air conditioning and heating business, but primarily as Faulkner Air Conditioning Service Company.
During the ownership of Lann, Goodgoin and Jones, plaintiff, who is the son of Leonard Faulkner and nephew of Harold Faulkner (now deceased), began to work in the air conditioning and heating business. Specifically, Todd Faulkner purchased sheet metal fabricating equipment from Jack Lann, enabling him to perform sheet metal work as an independent contractor. In fact, plaintiff performed service work for all three subsequent owners of his deceased uncle’s air conditioning business. He initially started his business as Todd’s Sheet Metal and subsequently operated as Todd’s Sheet Metal, Air Conditioning and Heating. One week after Jones purchased Goodgoin’s interest in the instant business, |5Todd Faulkner and his wife, on October 9, 1991, incorporated their business as “Faulkner Air Conditioning & Heating of Ruston, Inc.” The business was located at 1206 Farmerville Road, the prior address of Faulkner Corporation. Todd began to use the name Faulkner’s Air Conditioning & Heating Company of Ruston, Inc.
Mr. Jones testified that around the time he purchased Goodgoin’s share of the business, Todd discussed with him changing the name of his business to include the name Faulkner, and there was a disagreement between them over whether Todd could use the name. This dispute ultimately resulted in litigation. When Todd actually began using the Faulkner name in the air conditioning business, Mr. Jones filed suit to enjoin him from using the Faulkner name in association with the air conditioning and heating business in Ruston, alleging that the young Faulkner was attempting to appropriate the goodwill of Jones’s business. No reconventional demand was filed by Todd over Jones’s right to use the Faulkner name.
*258 The trial court rendered judgment of January 17, 1992, in favor of Todd, permitting him to operate as Faulkner’s Air Conditioning & Heating of Ruston, Inc. In its oral reasons for judgment, the trial court stated that Todd Faulkner was not part of any purported agreement between Jones and his predecessors that might require him to refrain from using his name in the air conditioning business, and that every person had a right to conduct business in his given name. Mr. Jones did not appeal this judgment.
On February 13, 1992, one month after the judgment, Todd Faulkner and his father, Leonard Faulkner, filed an application with the Louisiana Secretary of State to register the Faulkner name and logo previously depicted. A certificate was issued to them on February 17, 1992. Jones also filed an application to |6register the trade name and Faulkner logo on February 17, 1992. Jones was issued a certificate from the Secretary of State on February 20, 1992. Defendant also produced as evidence a copy of a letter dated December 16, 1991, and sent to the secretary of state’s office requesting an application form to register the trade name. Finally, Mr. Jones reincorporated the Faulkner Corporation at some point during this period after obtaining a letter from Jack Lann dated February 15, 1992, relinquishing to the defendant all rights to the use of the name “Faulkner Corporation.”
After the first lawsuit, the parties apparently engaged in an advertising war, both using the Faulkner name and logo in substantially similar ads. Approximately ten weeks after the judgment denying Mr. Jones the exclusive use of the Faulkner name in association with the air conditioning and heating business, Todd Faulkner and his father, Leonard Faulkner, filed the instant petition for an injunction prohibiting Mr. Jones from continuing to use the Faulkner name and logo in association with the air conditioning and heating business and for damages arising from confusion in the marketplace allegedly generated by Jones’s use of the Faulkner name and logo in his advertising.
The trial court denied Mr. Jones’s exception of res judicata and held that Mr. Jones had not acquired the right to use the Faulkner name through his purchase of the business from Frank Goodgoin because neither Goodgoin, nor his vender, Jack Lann, had acquired the right to use the Faulkner name through their purchases of the business. Accordingly, the court rendered judgment in favor of plaintiffs enjoining Mr. Jones from using the Faulkner name in association with the air conditioning and heating business. For the same reasons, the court enjoined Jones from using the Faulkner logo. Finally, the court found that both parties’ use of the same name and logo was causing |7confusion in the marketplace, but no damages were awarded because plaintiffs had not introduced any evidence of the extent and nature of any damages caused by the confusion.
Mr. Jones now appeals this judgment, asserting three assignments of error: First, Mr. Jones asserts that the trial court erred in failing to sustain his exception of res judi-cata. Second, Jones submits that the court erred in holding that the defendant did not own or have the right to use the Faulkner name and logo in his business. Finally, Jones contends the trial court erred in rendering a judgment enjoining him from using the Faulkner name and logo in his air conditioning and heating business.
In his first assignment of error, Jones argues that Todd Faulkner’s claim should have been raised as a compulsory counterclaim pursuant to Louisiana Code of Civil Procedure article 1061(B) in the first suit filed by Jones against Faulkner.[3]
*259 We pretermit the res judicata issue, however, even though it appears the trial court may have erred in its analysis of the issue by applying pre-amendment law. Even if the issue of res judicata were to be decided in favor of the appellant, it is clear that a determination of that issue would not dispose of the claim of Leonard Faulkner regarding the use of the Faulkner logo, inasmuch as |8Leonard Faulkner was not a party to the previous action. Accordingly, in the interest of judicial economy, we proceed to appellant’s second assignment of error.
In its written reasons for judgment, the trial court found that the critical issue in the case was whether, in the original sale of Faulkner Corporation to Jack Lann, Lann acquired the right to use the Faulkner name in the operation of the business. Because specific mention of the sale of the name was not included in the act of sale, and because the non-competition agreement prohibited Harold Faulkner from conducting an air conditioning business for a period of only one year, the court found that Lann never acquired the right to use the Faulkner name. The court made this finding notwithstanding the fact that neither Harold Faulkner, his wife, nor his relatives (including the plaintiffs) ever complained about Lann, Goodgoin, or appellant using the Faulkner name for a period of over five years after the sale to Lann and even though Harold and Erma Faulkner transferred the entire ownership of Faulkner Corporation, which operated under the trade name “Faulkner Service Company,” to Jack Lann. For the reasons that follow, we hold that the trial court erred in this conclusion.
We note at the outset that the question presented is limited to the right to use the surname “Faulkner” in association with the air conditioning and heating business, and that the numerous variations in combination with that surname, e.g., Faulkner Air Conditioning, Faulkner Air Conditioning and Heating, Faulkner Air Conditioning Sales & Service, etc., do not present an issue inasmuch as they are merely descriptive of the particular business. It has long been held that no word or combination of words can be exclusively appropriated if it is merely descriptive of the particular business. Givens Jewelers, Inc. v. Givens, 380 So.2d 1227 (La.App. 2d Cir.1980), writ denied, 383 So.2d 800 (La. 1980); White v. White, 68 So.2d 648 (La.App. 1st Cir.1953).
The apparent race between the parties to register the trade name and logo “Faulkner” is of no consequence in determining the right to use- the Faulkner name:
The registry of a trade mark or a service mark confers only procedural advantages, and not substantive rights. It confers no greater proprietary rights than exist without registration, and thus the registration by one party, or the lack of registration by the other, is not decisive as to the right of either party to use the trade mark or trade name.
Givens Jewelers, Inc. v. Givens, supra at 1231; See also Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La.App. 4th Cir.1962); Metalock Corp. v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La.App. 4th Cir.1972), writ denied, 262 La. 189, 262 So.2d 788 (1972).
The trial court concluded that although Jack Lann purportedly conveyed the use of the trade name “Faulkner” to Goodgoin and defendant, this conveyance was invalid because Lann never had any proprietary right to the name to begin with. The court reasoned that the absence of an express stipulation conveying the trade name “Faulkner” to Lann in the “Act of Sale of Business” con-fected by Harold Faulkner and Lann and the one-year term of the non-competition agreement was evidence that Lann’s vendors -had no intention of transferring that right. We disagree.
In Vonderbank v. Schmidt, 10 So. 616, 619 (La.1892), the supreme court, citing other jurisprudence, stated:
[Wjhen an express contract has been made ... for the use by a purchaser of a fictitious name, or a trade-name, or a trade *260 mark, courts will enjoin the continued violation of such an agreement. [Citations omitted.] But the court further stated that such a stipulation need not have been made in the act of sale, because “an assignment of all the stock, property, and effects of a business ... carries with it the exclusive right to use a fictitious name in which such business is carried on, and such trade-names lipand trade-marks as have been in use in such business. These incidents attach to the business ... and pass with it....”
We find this statement no less true today. The name of Faulkner in association with the air conditioning and heating business was a trade name of Faulkner Corporation, and, as such, constituted an asset of the corporation. When the ownership of the corporation was conveyed to Jack Lann, the right to continue to use that trade name passed with the sale.
Nor is there sound ground in the trial court’s reliance on Harold Faulkner’s limited reservation of the right to compete in the air conditioning business as evidence of his intent not to convey the use of his name. The fact that he could start a competing business after one year does not necessarily mean he could use his own name as a trade name. The sale to Lann was with warranty. “Even the use of one’s own name in business is not permitted if that use is with the fraudulent intent of appropriating the business of another of the same name which was acquired and established by the previous use of that name.” Givens Jewelers, Inc. v. Givens, supra at 1232.
In Givens, controversy erupted between two brothers over the use of the trade name and trade mark or logo that both had used when the two were in business together. After the two brothers went their separate ways in the jewelry business, each continued to use the trade name and trade mark, however, one of the brothers registered the trade name and trade mark and then filed suit to enjoin his brother from using it. The trial court’s grant of the injunction against the brother who had not registered the trade mark was reversed. We held that because the brother who had registered the trademark had allowed the unrestricted and indiscriminate use of the trade mark by his brother without complaint, that the brother who had registered the trademark was precluded from claiming the exclusive right of the trademark. “Exclusivity of use is a 1 |11prerequisite to an injunction in trademark, trade name cases.” Givens, supra at 1231; Metalock Corporation v. Metal-Locking of Louisiana, Inc., supra.
Likewise, the evidence in the record clearly establishes that Harold Faulkner used the Faulkner trademark or logo as early as 1968, four years prior to the year Leonard Faulkner alleges he created it. Irrespective of that fact, however, as we stated in the previous paragraph, exclusivity of use is a prerequisite to an injunction in trademark as well as trade name cases. The defendant and his predecessors used the Faulkner logo just as long, if not longer, than Leonard Faulkner. Accordingly, the trial court erred in its finding that Leonard Faulkner had exclusive right to use the Faulkner trademark and logo.
For these reasons, the judgment of the trial court appealed herein is reversed and set aside. Judgment is hereby rendered rejecting the demands of the plaintiffs. All costs of this litigation are assessed to plaintiffs-appellees.
REVERSED AND RENDERED.

. The trial court found that the stock in the corporation lapsed during the ownership of Lann. Testimony indicates that the corporate charter was dissolved on November 19, 1990, after the September 1, 1990, sale of assets to Goodgoin. By corporate resolution dated July *257 28, 1986, Lann was given authority to dispose of all corporate assets as he saw fit.

. The trial court found Mr. Goodgoin’s testimony that the amended contract was signed on Sep-teraber 1, 1990, incredible inasmuch as Good-goin testified in the previous trial that he believed the signing occurred six or seven months after the original contract date.

. That statute states, in pertinent part:
The defendant in the principal action ... shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject of the principal action. Louisiana’s res judicata statute, LSA-R.S.
13:4231, effective January 1, 1991, provides in pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
[[Image here]]
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the *259 litigation are extinguished and the judgment bars a subsequent action on those causes of action.